IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIAMOND G RODEOS, INC., a Utah corporation; STEVE GILBERT, an individual; and CYNDI GILBERT, an individual,<br><br>      Plaintiffs,<br><br>v.<br><br>BRIAN JAMES GIFFORD, an individual; and DOES 1-10,<br><br>      Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTION TO COMPEL<br><br><br>Case No. 4:22-cv-00089-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This matter is before the Court on Plaintiffs' Motion to Compel[1] and their Supplemental Memorandum.[2] For the reasons discussed below, the Court grants the Motion to Compel, orders the parties to supplement their discovery responses as set out below, imposes monetary sanctions on Mr. Gifford, but denies Plaintiffs' request for terminating sanctions.

## I.  BACKGROUND

This case arose after Defendant Gifford allegedly stole several purebred horses from his employer, Diamond G Rodeos, Inc. Diamond G is a livestock breeder and renowned stock contractor for PBR and PRCA Rodeos and events nationwide. Mr. Gifford was employed as a ranch manager for Diamond G from September 1, 2021, to April 21, 2022. Mr. Gifford allegedly

---

[1] Docket No. 36, filed November 6, 2023.

[2] Docket No. 48, filed January 23, 2024.

transported three horses out of Utah without permission in December 2021, and another ten

horses out of Utah without permission after his discharge from employment. Plaintiffs allege that

the livestock has since been sold, traded, and/or transported to Wyoming and used in Mr.

Gifford's own livestock contracted events. They also claim that Mr. Gifford has made false and

inflammatory statements about Diamond G and the Gilberts to Plaintiffs' business associates via

email and other social media posts.

Mr. Gifford alleges that he purchased a rodeo horse named "Chucking Fire" at an auction

in February 2020. Diamond G personnel allegedly transported this horse to Diamond G property

and branded it at Plaintiffs' direction, even though Plaintiffs did not purchase the horse from Mr.

Gifford. Mr. Gifford alleges that Plaintiffs' have not allowed him to remove the horse from

Diamond G property, and that Plaintiffs have transported the horse without his permission. He

alleges that Chucking Fire is now injured or dead.

In June 2023, Plaintiffs served their first set of discovery requests on Mr. Gifford.[3] Mr.

Gifford responded on July 18, 2023, but his responses were largely non-responsive to Plaintiffs'

requests.[4] After the parties meet and confer attempts failed, Plaintiffs filed their Motion to

Compel.

On November 7, 2023, a status conference was held and Mr. Gifford, acting pro se, was

ordered to supplement his discovery responses by November 28, 2023. At a follow-up status

conference, held on December 6, 2023, Mr. Gifford, still pro se, was again ordered to

---

[3] Docket No. 36-1.

[4] Docket No. 36-2.

supplement his discovery responses to address the deficiencies set out in Plaintiffs' Short Form Discovery Motion.[5]

On December 28, 2023, Mr. Gifford submitted a lengthy affidavit. Much of the affidavit consisted of casting aspersions on Plaintiffs and their counsel, and complaining about a related (and now dismissed) criminal case. The affidavit also complains about certain mares in Mr. Gifford's possession that he claims belong to Plaintiffs. However, these mares are not part of either the Complaint or Mr. Gifford's Counterclaim.[6]

On January 3, 2024, the Court conducted another hearing regarding Plaintiffs' outstanding discovery requests. The Court ordered the parties to submit supplemental briefs to address what discovery requests remain unanswered and what sanctions, if any, are appropriate given Mr. Gifford's apparent failures to produce discovery. Plaintiffs filed their supplemental memorandum on January 23, 2024.[7] On February 6, 2024, the Court received from Mr. Gifford 19 pages of what appears to be a mish mash of sovereign citizen gobbledygook.[8] On February 12, 2024, Mr. Gifford filed a response to Plaintiffs' request for sanctions.[9]

## II.  DISCUSSION

Federal Rule of Civil Procedure 37(a)(3)(B)(iii) and (iv) provides a motion to compel may be made if "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents . . . as requested under Rule 34." Similarly, Rule 36(a)(6) states that a

---

[5] Docket No. 36.

[6] Mr. Gifford has also filed a motion for injunctive relief related to these mares. *See* Docket No. 38.

[7] Docket No. 48.

[8] *Wells v. Loncon*, CV418-296, 2019 WL 1339618, at *2 (S.D. Ga. Feb. 29, 2019); *see* Docket No. 50.

[9] Docket No. 51.

party making a request for admission "may move to determine the sufficiency of an answer or objection." Further, Fed. R. Civ. P. 26(b)(1) provides parameters for discovery. Discovery must be:

> relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

To provide clarity to the parties and to avoid further discovery disputes, the Court finds it necessary to address each of Plaintiffs' discovery requests, determine whether Mr. Gifford is required to respond to the request as written, determine whether Mr. Gifford has adequately responded, and specify those requests to which Mr. Gifford's response is deficient. The Court sets out each request below:

## REQUESTS FOR ADMISSION

**REQUEST NO. 1: Admit you have no written agreement regarding your claimed ownership interest in Diamond G Rodeos.**

- In his response to RFA No. 1, Mr. Gifford contends that a verbal agreement was made between the parties. Based upon this, the Court construes Mr. Gifford's response as an admission that there is no written agreement documenting his claim of ownership interest in Diamond G Rodeos. No further response is required.

**REQUEST NO. 2: Admit that you currently use or otherwise have used in the past the following email addresses: (a) bjgiff13@yahoo.com; (b) bgifford@rodeoexcel.com; and (c) bgifford@diamondgrodeo.com.**

- In his response to RFA No. 2, Mr. Gifford responds that he uses the yahoo.com and rodeoexcel.com email addresses but that he does not currently have access to the diamondgrodeo.com address. The Court construes this as an admission that Mr. Gifford either is

using or has used these email addresses. Mr. Gifford also supplemented his discovery responses to identify other email addresses he has used. No further response is required.

**REQUEST NO. 3: Admit after being terminated from Diamond G's employment, you filed and received employee unemployment benefits.**

• Mr. Gifford has admitted this request. No further response is required.

**REQUEST NO. 4: Admit that you or your agents have removed horses and/or bulls from Diamond G Ranch properties without proper Utah health or brand inspections.**

• Mr. Gifford has denied this request. No further response is required.

**REQUEST NO. 5: Admit that you have preserved all evidence related to this dispute, including all correspondence, communications, texts, photographs, video and audio recordings, social media posts, and all other information related to the matters at issue in the pleadings.**

• Mr. Gifford has denied this request. No further response is required. Whether this response means Mr. Gifford has spoliated evidence is left for another day.

**REQUEST NO. 6: Admit that you have slandered Steve Gilbert.**

• Mr. Gifford has denied this request. No further response is required.

**REQUEST NO. 7: Admit that you have slandered Cyndi Gilbert.**

• Mr. Gifford has denied this request. No further response is required.

## INTERROGATORIES

**INTERROGATORY NO. 1: Identify all horses and bulls in your possession that have a Diamond G brand, separately identifying those with only the Diamond G brand and those with both the Diamond G brand and another brand.**

- Mr. Gifford has adequately responded to this interrogatory. Mr. Gifford has identified three mares in his possession that bear the Diamond G brand: 4G, 26G, and 30. He later stated that 8 additional horses—Nos. 44, 52, 08, 41, 847, 51, 11, and 1V—bore both the Diamond G brand and his personal brand. He has further indicated that the remaining horses identified in the Complaint—Nos. 04G, 02G, 03G, 01G, 05G, and 07G—are unbranded. No further response is required.

**INTERROGATORY NO. 2: For the time period 2018 to present, identify all bulls and horses (including mares, studs, and geldings) that you, or anyone acting on your behalf, has sold or otherwise transferred. For each such animal identified: (a) state the brand or brands; (b) identify the purchaser or transferee; and (c) state the purchase price or consideration received.**

- This interrogatory is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored interrogatory and Mr. Gifford retains the right to object to any re-drafted interrogatory.

**INTERROGATORY NO. 3: Identify all horses and bulls that you have listed or otherwise put up for sale since April 1, 2020.**

- Mr. Gifford must respond to this interrogatory. Unlike the previous interrogatory, this is more narrowly tailored to the issues in this case and does not request overly broad information.

**INTERROGATORY NO. 4: Since April 21, 2020, state each date and time that you and/or anyone acting on your behalf removed from the Diamond G premises any horse or bull bearing a Diamond G brand and identify: (a) any person who assisted you with gathering and/or removing any such animal.**

- This interrogatory is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored interrogatory and Mr. Gifford retains the right to object to any re-drafted interrogatory.

**INTERROGATORY NO. 5: Since April 21, 2020, identify all persons who assisted you in gathering, transporting and/or lodging any horse or bull bearing the Diamond G brand. Include in your response the mode of transportation and identify any vehicle used in such transport.**

- This interrogatory is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored interrogatory and Mr. Gifford retains the right to object to any re-drafted interrogatory.

**INTERROGATORY NO. 6: Identify all horses, bulls, and other livestock in your possession which bear the Diamond G brand and include the current location of all such animals.**

- Mr. Gifford has partially responded to this interrogatory. Mr. Gifford has identified three mares in his possession that bare the Diamond G brand. He has further stated that these mares are located in Bighorn County, Wyoming. Five additional horses—Nos. 44, 52, 41, 11, and 1V—are also in Wyoming. Mr. Gifford represents that No. 51 was sold in the spring of 2021. Mr. Gifford has not, however, identified the location of mares Nos. 08 and 847. He must supplement his response to identify the location of these two mares.

**INTERROGATORY NO. 7: From December 1, 2021 to present, identify any and all trucks, trailers, or equipment that you have used to remove any animals from the Diamond G ranch premises.**

- This interrogatory is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored interrogatory and Mr. Gifford retains the right to object to any re-drafted interrogatory.

**INTERROGATORY NO. 8: Identify all accounts email and social media accounts that you have used since January 1, 2018, including those in which you act under an alias.**

- As discussed in response to RFA No. 2, it appears that Mr. Gifford has provided this information. No further response is required at this time.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1: Produce all documents which you claim support your contention that you were promised an ownership interest in Diamond G Rodeos.**

- Based on Mr. Gifford's response to RFA No. 1, the Court construes Mr. Gifford's response to the RFP as admitting that no such documents exist. No further response is required at this time. If any such documents do exist, Mr. Gifford must produce them.

**REQUEST NO. 2: For the time period May 2019 to present, produce all communications—including emails, text messages, and communications using social media— with the following persons: Owen J. Albrecht; Cassie B. Ginn; Grant Larson, Thane Marshall (and any other brand inspector); Chris Hone (and any of his family or employees); Butler & Son Rodeo (such as Bennie Butler, Rhett Butler, their agents and/or employees and independent contractors); Burch Rodeos (Matt Burch, Anna Burch, their agents and/or employees and independent contractors); Dick Gifford (any agents, employees and/or independent contractors); and any other stock contracting company whether PRCA, IPRA, amateur or other rodeo event affiliation, in which the subject of the**

communication relates or refers to horses, bulls, rodeos, practice events, Diamond G Rodeos, Diamond G Ranches, Steve L. Gilbert, or Cyndi W. Gilbert.

- This request is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored request and Mr. Gifford retains the right to object to any re-drafted request.

**REQUEST NO. 3: For each animal identified in your response to Interrogatory No. 2:, produce: (a) all brand inspections for the animal; (b) all health inspections for each animal; (c) any bills of sale; (d) proof of payment (i.e. check, bank receipt of wire transfer in you or your agents bank account; and (e) any contracts, agreements, and communications with the buyer or transferee.**

- This request is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored request and Mr. Gifford retains the right to object to any re-drafted request.

**REQUEST NO. 4: Produce all social media posts and communications you have made (or had others make on your behalf) since May 2019 which refer or relate to Diamond G Rodeos, Diamond G Ranches, Steve L. Gilbert, and/or Cyndi Gilbert.**

- Mr. Gifford is directed to produce posts and communications that are responsive to this request. If no such documents exist, he must so indicate.

**REQUEST NO. 5: Produce all documents related to payments received for the bucking or breeding of any animals, including checks, contracts, bills of sale, or any other forms of payment. This includes any assets, whether partially or wholly owned by you, that have been traded, sold, or entered into a partnership with you since May 2021.**

- This request is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored request and Mr. Gifford retains the right to object to any re-drafted request.

      **REQUEST NO. 6: Produce all videos taken from January 1, 2020 to December 31, 2022 which show or otherwise depict any Diamond G horses, colts, bulls, or other livestock, whether filmed by you or provided to you by someone else. This includes any setting and for any purpose, including but not limited to practices, events, as well as any surveillance video.**

- Mr. Gifford must produce videos responsive to this request. However, he need only produce videos filmed by him that are currently in his possession. If no such videos exist, he must so indicate.

      **REQUEST NO. 7: Produce all recordings made of telephone or oral conversations (1) between you and Steve Gilbert and/or Cyndi Gilbert; and (2) between you and any other person in which Steve Gilbert, Cyndi Gilbert, or Diamond G was discussed or referenced.**

- Mr. Gifford must respond to this request. However, the Court limits this request to such recordings made from 2021 to present. If no such recordings exist, Mr. Gifford must so indicate.

      **REQUEST NO. 8: Produce all communications and text messages from 2018 to present which refer or relate to any of the following: Diamond G Rodeos, Diamond G Ranches, Steve Gilbert, Cyndi Gilbert, "Fuzzy Britches", "horse thief", Keith Gilbert, Diamond G Gilbert Development Corporation, Utah Iron, LLC (the iron mine), or any other business owned by the Plaintiffs.**

- This request is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored request and Mr. Gifford retains the right to object to any re-drafted request.

**REQUEST NO. 9: Produce your phone records for all phones used by you for the time period December 1, 2021 to present.**

- Mr. Gifford must respond to this request. Alternatively, he can consent to Plaintiffs issuing a subpoena for the same.

**REQUEST NO. 10: Produce any and all documents you relied on for any statement you have made referencing: (a) Steve Gilbert; (b) Cyndi Gilbert or "fuzzy britches"; (c) Diamond G Rodeos; (d) Diamond G Ranches; or (f) Lewis Field.**

- This request is overly broad and disproportional to the needs of the case. Mr. Gifford need not respond at this time. Plaintiffs may propound a more narrowly tailored request and Mr. Gifford retains the right to object to any re-drafted request.

**REQUEST NO. 11: Produce all documents related to the sale of your home, furniture, lawnmowers, welders, and household items, and which support your claimed loss of income resulting from your decision to move to Utah and work for the Diamond G.**

- Mr. Gifford must respond to this request. The Court clarifies that this request only seeks documents that support Plaintiff's claimed loss of income. Mr. Gifford need not produce documents if they are unrelated to his claim.

The Court orders Mr. Gifford to supplement his discovery responses in accordance with the instructions above by March 22, 2024. Mr. Gifford is reminded that he is obligated to produce discovery that is in his "possession, custody, or control."[10] Additionally, Mr. Gifford is reminded of his obligation to supplement or correct any prior discovery disclosure or response.[11]

---

[10] Fed. R. Civ. P. 26(a).

[11] Fed. R. Civ. P. 26(e).

11

If Mr. Gifford withholds any discovery on the basis of privilege, he must describe the material and set forth the basis for his claim of privilege.[12] Further, if Mr. Gifford is unable to produce discovery as ordered, he must explain why he cannot do so and what efforts he has taken to comply with his discovery obligations.

In addition to Plaintiffs' requests for production, Mr. Gifford has requested certain discovery and it is unclear to the Court whether Plaintiffs have sufficiently responded. Specifically, Mr. Gifford seeks proof of ownership of the animals at issue in the Complaint. The Court agrees that such discovery is relevant and proportional to the needs of this case. Plaintiffs shall provide any and all discovery relating to the ownership of the animals at issue to Mr. Gifford by March 22, 2024. If Plaintiffs do not have discovery demonstrating that they own the horses at issue, they must so indicate.

Having determined that Mr. Gifford's discovery responses continue to be at least partially deficient and that he has failed to comply with the Court's prior orders, the Court must consider whether sanctions are appropriate. Federal Rule of Civil Procedure 37(b)(2)(A) provides for several, discretionary sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[13]

---

[12] Fed. R. Civ. P. 26(b)(5).

[13] Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

When determining an appropriate sanction under Rule 37(b)(2)(A), a court must consider

a number of factors, including: (1) the degree of actual prejudice to the plaintiff; (2) the amount

of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court

warned the party in advance that dismissal or default judgment of the action would be a likely

sanction for noncompliance; and (5) the efficacy of lesser sanctions.[14] The *Ehrenhaus* factors

listed above are not "a rigid test; rather, they represent criteria for the district court to consider

[before] imposing dismissal as a sanction."[15]

Here, Plaintiffs seek dispositive sanctions including default judgment. But "dismissal or

other final disposition of a party's claim 'is a severe sanction reserved for the extreme case, and

is only appropriate where a lesser sanction would not serve the ends of justice.'"[16] "Only when

the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on

their merits is dismissal [or default judgment] an appropriate sanction."[17]

Taking the *Ehrenhaus* factors in turn, it appears that dispositive sanctions are not yet

warranted. First, Plaintiffs are prejudiced by Mr. Gifford's repeated failures to participate in the

---

[14] *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[15] *Id.*; *see also Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) ("The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always be a discretionary function."); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (describing *Ehrenhaus* factors as "not exhaustive, nor . . . equiponderant"); *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.,* 70 F.3d 1172, 1174 (10th Cir. 1995) ("[D]etermining the correct sanction is a fact specific inquiry that the district court is in the best position to make.").

[16] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (quoting *Hancock v. City of Okla. City*, 857 F.3d 1394, 1396 (10th Cir. 1988)).

[17] *Ehrenhaus*, 965 F.2d at 921 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988) *abrogated on other grounds by Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2016)).

13

litigation. Prejudice may be inferred from delay, uncertainty, and rising attorney's fees.[18] In this

case, Plaintiffs have made several attempts to gather discovery so that this case can proceed.

Over a period of several months, Plaintiffs have been unsuccessful in obtaining such discovery

from Mr. Gifford. The Court ordered Mr. Gifford supplement his discovery responses, but they

continue to be deficient. The failure to properly respond to Plaintiffs' discovery has led to the

instant motion and more litigation, including additional attorney's fees incurred by Plaintiffs.

This extended delay and rising attorney's fees constitute serious prejudice to Plaintiffs.

Second, Mr. Gifford's failure to participate in the litigation has interfered with the

judicial process. His repeated failures to provide discovery hampers the ability of the Court and

the parties to move this case forward.

Third, Mr. Gifford is clearly culpable. The Tenth Circuit has articulated that while

dismissal and default judgment are "drastic sanction[s], [they are] appropriate in cases of willful

misconduct."[19] It has further defined a "'willful failure' to mean 'any intentional failure as

distinguished from involuntary noncompliance. No wrongful intent need be shown.'"[20] Mr.

Gifford's conduct was willful because he agreed to supplement his discovery responses to

---

[18] *Faircloth v. Hickenlooper*, 758 F. App'x 659, 662 (10th Cir. 2018) (unpublished);
*Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993); *see also Auto-Owners Ins. Co. v.
Summit Park Townhome Ass'n*, 886 F.3d 852, 860 (10th Cir. 2018) (finding substantial prejudice
when defendant "sparked months of litigation" and "wasted eight months of litigation"); *Riviera
Drilling & Expl. Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 93 (10th Cir. 2011)
(unpublished) (upholding district court's finding that delay "would prolong for the defendants
the substantial uncertainty faced by all parties pending litigation") (internal quotation marks
omitted).

[19] *Lopez-Bignotte v. Ontivero*, 42 F. App'x 404, 407 (10th Cir. 2002) (citing *Ehrenhaus,
965 F.2d at 920*).

[20] *Id.* (quoting *Sheftelman v. Standard Metals Corp.,* 817 F.2d 625, 628–29 (10th Cir.
1987).

Plaintiffs but failed to adequately do so despite several admonitions from the Court instructing him on what needed to be done.

Fourth, a dispositive sanction would be inappropriate at this stage because the Court has not warned Mr. Gifford of the possibility of such a sanction. To comply with due process interests, the Court must be convinced that proper notice and warning were given before it can impose a severe sanction. Such a warning need not be express; constructive notice is sufficient.[21] While not warranted at this point, Mr. Gifford is warned that continued failures to provide discovery may result in sanctions, up to and including default judgment.

Fifth, imposition of a lesser sanction would be sufficient in this case. The Court has yet to impose any sanctions in this case and believes that monetary sanctions will be sufficient, at this time, to promote compliance. The Court will award Plaintiffs their attorney's fees incurred in preparing their supplemental memorandum.[22] The Court declines to award Plaintiffs' their entire fees incurred in litigating their Motion to Compel because it appears that Mr. Gifford has made some effort to provide discovery.[23] The Court further denies Plaintiffs' other requested sanctions.

### III.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion to Compel (Docket No. 36) is GRANTED as set forth above. The parties must supplement their discovery responses by March 22, 2024. Failure to do so may result in sanctions up to and including default judgment. Additionally, the Court orders Mr. Gifford to reimburse Plaintiff for the attorney's fees incurred in drafting their supplemental

---

[21] *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149–50 (10th Cir. 2007).

[22] Docket No. 48.

[23] *See* Fed. R. Civ. P. 37(a)(5)(A).

memorandum (Docket No. 48). Mr. Pattison is directed to provide an accounting to Mr. Gifford

and the parties are to meet-and-confer about the requested amount. If the parties are unable to

agree to the amount to be paid, they are to contact the Court. It is further

ORDERED that the last day to serve written discovery is extended to March 22, 2024,

and the close of fact discovery is extended to May 24, 2024.

SO ORDERED this 23rd day of February, 2024.

PAUL KOHLER
United States Magistrate Judge

16