Bryan J. Pattison (8766)
**BLANCHARD PATTISON LLC**
50 East 100 South, Suite 101
St. George, Utah 84770
Phone: (435) 688-1313
bryan@blanchardpattison.com
Attorneys for Plaintiffs/Counterclaim-Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIAMOND G RODEOS, INC., a Utah corporation; STEVE GILBERT, an individual; and CYNDI GILBERT, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>BRIAN JAMES GIFFORD, an individual; and DOES 1-10,<br><br>    Defendants. | **PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS**<br><br>Case No. 4:22-cv-00089-DN-PK<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

    Plaintiffs/Counterclaim-Defendants Diamond G Rodeos, Inc., Steve Gilbert, and Cyndi Gilbert move for terminating sanctions against Defendant/Counterclaimant Brian Gifford because he has again flouted the Court's discovery orders. (Dkt. 52.) This time, he did so with notice that terminating sanctions could result. Accordingly, terminating sanctions are now warranted.

1

## BACKGROUND

### A. Gifford's Violation of the Court's February 23, 2024 Order.

On February 23, 2024, this Court resolved Plaintiffs' ongoing effort to obtain discovery from Gifford by ordering him to respond to two interrogatories and five requests for production by March 22, 2024. (Order, Dkt. 52.)

Instead of simply responding to the discovery as ordered, Gifford filed a rambling and accusatory document which he titled "Affidavit in response to docket 52 short term discovery in Case 4:22-cv-00089-DN Diamond G Rodeos et al v Gifford" (the "March 22 Affidavit"). (Dkt. 57.) Buried on page 5 of this March 22 Affidavit is Gifford's effort to respond to Diamond G's discovery. But on review, the only discovery request that he responded to was Interrogatory No. 6. He gave no response to Interrogatory No. 3 or Request for Production No. 7. And his responses to the remaining discovery—Request for Production Nos. 4, 6, 9, and 11—were mere promises to look for information. (Dkt. 57.) For convenience, we put the discovery request, the Court's Ruling, and Gifford's response side-by-side below:

**Interrogatory No. 3**

| Request | Court Ruling (Dkt 52) | Gifford's Response |
|---|---|---|
| INTERROGATORY NO. 3: Identify all horses and bulls that you have listed or otherwise put up for sale since April 1, 2020 | Mr. Gifford must respond to this interrogatory. Unlike the previous interrogatory, this is more narrowly tailored to the issues in this case and does not request overly broad information. | |

Gifford's failure to respond violates the Court's Order.

2

**Request for Production No. 4**

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| REQUEST NO. 4: Produce all social media posts and communications you have made (or had others make on your behalf) since May 2019 which refer or relate to Diamond G Rodeos, Diamond G Ranches, Steve L. Gilbert, and/or Cyndi Gilbert. | Mr. Gifford is directed to produce posts and communications that are responsive to this request. If no such documents exist, he must so indicate | For Request No. 4, _Gifford is still working to obtain social media posts_ but does not deny calling Steve Gilbert a horse thief for taking 546 Chucking Fire without having ever paid a nickel for him nor compensating Gifford for him with any trades being followed through- trades promised by Gilbert but never having occurred. Gifford does admit to referencing Cyndi as "Fuzzy Britches"- a term he heard from Steve at one point and info had been provided previously. If any other specific posts or information is requested, please be specific and Gifford will provide if it still exists. (Emphasis added.) |

Gifford has had over nine months to locate and produce responsive information. (Dkt. 36-1.) Rather than producing the information,[1] he says only that he's working on it. That promise is a meaningless non-response which violates this Court's February 23 Order. *See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997) ("[A] response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(3) is treated as a failure to answer or respond."); *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 246 (M.D.N.C. 2010) ("[T]he promise to continue to search for records and supplement [one's] responses in the future, is a completely inadequate response to a long standing discovery request") (cleaned up)). Indeed, Gifford has made this same empty promise before, including on –

---

[1] Gifford also fails to confirm if the documents exist. And after nine months of shadowboxing over the issue, it would be difficult to accept him at his word on that score.

- November 13, 2023, when he stated: "As an update- I will begin working through the discovery requests that you."  (Dkt. 48-1 at p. 4 – Nov. 13, 2023 email from Gifford);

- November 15, 2023, when he stated: "Absolutely am working on the discovery the court ordered …."  (Dkt. 48-1 at p. 7 – Nov. 15, 2023 email from Gifford);

- December 20, 2023, when he stated: "If there is anything additional you need, let me know and I will see what I can dig up."  (Dkt. 48-1 at p. 31 – Dec. 20, 2023 email from Gifford).

In short, Gifford's response violates this Court's February 23 Order.

**Request for Production No. 6**

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| REQUEST NO. 6: Produce all videos taken from January 1, 2020 to December 31, 2022 which show or otherwise depict any Diamond G horses, colts, bulls, or other livestock, whether filmed by you or provided to you by someone else. This includes any setting and for any purpose, including but not limited to practices, events, as well as any surveillance video. | Mr. Gifford must produce videos responsive to this request. However, he need only produce videos filmed by him that are currently in his possession. If no such videos exist, he must so indicate. | For Request No. 6, _Gifford is attempting to find the hard drive that has the videos of the practices and information requested_- including Steve Gilbert overseeing previous years bull riding practices at Ranch I without any bullfighters present. If the plaintiffs could narrow specifically what they are looking for, it would be beneficial. (Emphasis added.) |

As with Request No. 4, Gifford has had over nine months to locate and produce responsive documents.  His failure to timely locate and produce responsive documents violates this Court's February 23 Order.

**Request for Production No. 7**

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| REQUEST NO. 7: Produce all recordings made of telephone or oral conversations (1) between you and Steve Gilbert and/or Cyndi Gilbert; and (2) between you and any other person in which Steve | Mr. Gifford must respond to this request. However, the Court limits this request to such recordings made from 2021 to present. If no such recordings exist, Mr. Gifford must so indicate. | |

4

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| Gilbert, Cyndi Gilbert, or Diamond G was discussed or referenced. | | |

Gifford's failure to respond to this violates this Court's February 23 Order.

**Request for Production No. 9**

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| REQUEST NO. 9: Produce your phone records for all phones used by you for the time period December 1, 2021 to present. | Mr. Gifford must respond to this request. Alternatively, he can consent to Plaintiffs issuing a subpoena for the same. | For Request No. 9, *Gifford has reached out to a Verizon store for assistance and is working diligently to obtain the records for his Iphone with phone number 307-696-7834*. If the plaintiffs could narrow down specific contacts and information the request is asking tor- it would be helpful. The other phone Gifford had in his possession was Diamond G's phone that was provided by Gilberts. Gilberts have not provided Gifford with the text messages that would confirm his role and partnership at Diamond G. Gifford does not recall the specific phone number that was provided to him by Diamond G. Gilberts have possession of the phone as it was turned over by Gifford when he turned in the Diamond G credit card and pickup. (Emphasis added.) |

This response is also nonresponsive and Gifford's continual promises to work to obtain the information is not sufficient or plausible. In two different meet and confer communications, Plaintiffs told Gifford that all he needed to do to comply with Request No. 9 was to download and produce his cellphone bills which would show both incoming and outgoing phone numbers:

- July 23, 2023: "Request No. 9 asked for phone records for a limited time period. As Ms. Ginn showed, it is simply a matter of downloading your phone bills for this time period and producing them. Please do so" (Dkt. 36-3 at p.5, July 29, 2023 email from Pattison to Gifford)

- October 17, 2023: "Request No. 9 asks for phone records for a limited time period. This is not burdensome. Simply download your phone bills for this time period and produce

5

them. If you don't know how to do it, then call your provider for assistance." (Dkt. 36-3 at p. 8, Oct. 17, 2023 – letter from Pattison to Gifford).

The reference to Ms. Ginn on July 23, was to a witness whose phone records had been subpoenaed and who had no issue at all in producing those phone records before her deposition in the case. Gifford was at Ms. Ginn's deposition and knows this. He is simply refusing to comply.[2] That refusal violates this Court's February 23 Order.

**Request for Production No. 11**

| Request | Court Ruling (Dkt 52) | Gifford's Response (Dkt. 57) |
|---|---|---|
| REQUEST NO. 11: Produce all documents related to the sale of your home, furniture, lawnmowers, welders, and household items, and which support your claimed loss of income resulting from your decision to move to Utah and work for the Diamond G. | Mr. Gifford must respond to this request. The Court clarifies that this request only seeks documents that support Plaintiff's claimed loss of income. Mr. Gifford need not produce documents if they are unrelated to his claim. | For Request No. 11, _Gifford has many boxes of records in a storage unit and is still attempting to find the records of his home sale_. In included exhibits of this affidavit, Gifford has provide supplemental information to validate his claims and will continue to provide if he can find further records. Giffords land was a total of approximately 370 acres with a home. Here is the url for the current listing as the property is being sold by the party Gifford sold it to. *The balance of the acreage was sold to another party. 9151 Highway 59, Gillette, WY 82718 realtor.com® (Emphasis added.) |

As with Request No. 4, Gifford has had over nine months to locate and produce responsive documents. His failure to timely locate and produce responsive documents violates this Court's February 23 Order.

---

[2] Throughout this case, Gifford has shown the ability and technical knowledge it would take for one to access their own phone records. That includes creating email alias's and boasting, during the Ginn deposition, that he knows how to compress large files into smaller files for transfer: Gifford: "if you're having trouble with the NTS file, you can compress video, audio, that's all they are, those files." (Ginn Dep. 8:21-23).

### B.     The March 22 Affidavit is a continuation of Gifford's non-compliance with the rules and this Court's orders.

Rather than using the additional 30 days the Court gave him to locate and produce the documents the Court has now ordered him four times (Dkt. 37; 41; 43; 52) to produce, Gifford spent that time putting together still another affidavit in which he puts forward his view of the case, chides the Court, and disparages the Gilberts.  For example, he pushes back on the Court's warning of sanctions by claiming that Judge Kohler should no longer hold office:

> Article III of the Constitution, Section I states "The judges, both of the Supreme and Inferior courts, shall hold their offices during good behavior, and shall, at...." U.S. Code § 12203 Prohibition against retaliation and coercion. *Threatening me with sanctions and default judgement is not good behavior*.

(March 22 Affidavit - Dkt. 57 at p. 2) (Emphasis added.)

He also accuses the Court of being partial and inaccurate in its rulings:

> In light of these factual discrepancies and instances of misconduct, it's imperative for the court to reevaluate its portrayal of Diamond G Rodeos and to approach the case with a commitment to impartiality, factual accuracy, and justice.

(March 22 Affidavit - Dkt. 57 at p. 7.)

What Gifford apparently does not appreciate is that the Court has given him more chances than he deserves to ensure that his right to due process was not violated in striking his pleadings and entering default after he violated three prior orders.

More remarkable about Gifford's March 22 Affidavit is that between the time of the February 23 Order and March 22, the Court provided him with additional written warnings about this type of filing when it denied his motions for injunctive relief (Dkt. 55) and to dismiss (Dkt. 56).  Both orders were entered on March 13 and warned, in succession, that if Gifford continued to file "papers which do not comply with these standards or if he multiplies the proceedings

7

unreasonably and vexatiously" that sanctions could be entered against him such as "striking papers, including the answer and counterclaim." (Dkt. 55 – Order Denying Motion for Injunctive Relief); (Dkt. 56 – Order Denying Motion to Dismiss) (warning that "Sanctions for interference with the court's orderly proceedings may include striking papers, including the answer and counterclaim"). Still, less than 10 days after these warnings, Gifford filed his March 22 Affidavit which does not comply with the Court's February 23 Order or any court rule.

With that backdrop, we turn to the standards for issuing sanctions.

## ARGUMENT

**I.   Standards for Imposing Sanctions for Violating the Court's Discovery Orders.**

Rule 37(b)(2)(A) lists the available sanctions for violating court orders, including striking pleadings, dismissing all or part of the offending party's claims, and rendering default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi). The Court has discretion to choose a sanction warranted by the circumstances and as determined by the *Ehrenhaus* factors. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). We have previously briefed (Dkt. 48) and the Court has evaluated the *Ehrenhaus* factors in finding that "dispositive sanctions are not yet warranted." (Dkt. 52 at p.13.) A follow up review of these factors show that now is the time for such sanctions.

**A.   Prejudice to Plaintiffs.**

First, the Court has already found that Plaintiffs have suffered prejudice from Gifford's prior violations. (Dkt. 52 at 14.) His latest violation has only enhanced the prejudice in further delays in not receiving requested information and more attorney fees in bringing this motion. The prejudice remains.

### B.     Interreference with the judicial process.

The Court has likewise found the second *Ehrenhaus* factor was met. (Dkt. 52.) As before, "Mr. Gifford's [continued] failure to participate in the litigation has interfered with the judicial process. His repeated failures to provide discovery hampers the ability of the Court and the parties to move this case forward." (Dkt. 52 at p.14.)

### C.     Culpability.

Under this factor, the Court previously found that "Mr. Gifford is clearly culpable." (Dkt. 52 at p.14.) This remains true. Previously, he "agreed to supplement his discovery responses to Plaintiffs but failed to adequately do so despite several admonitions from the Court instructing him on what needed to be done." (Dkt. 52 p. 14-15.) Nothing has changed. The Court's February 23 Order told him what to do and when to do it. He failed.

### D.     Previous warnings.

The fourth *Ehrenhaus* factor considers prior warnings. The Court previously found this factor was lacking "because the Court has not warned Mr. Gifford of the possibility of such a [terminating] sanction." (Dkt. 52 at 15.) It then issued a warning to Gifford: "that continued failures to provide discovery may result in sanctions, up to and including default judgment." (*Id*.) With that warning given, the fourth *Ehrenhaus* factor is now met—particularly when coupled with the two follow up warnings issued between the Court's February 23 Order and Gifford's March 22 Affidavit filing. The fourth factor is therefore met.

### E.     Efficacy of lesser sanctions.

Finally, on the fifth *Ehrenhaus* factor, the Court previously determined that attorney fees for the supplemental memorandum were sufficient as a sanction. But Gifford refuses to

acknowledge or confer about, let alone pay those attorney fees.[3] Rather, we have a litigant who has serially ignored and refused to take seriously this Court's many warnings and who refuses to pay the attorney fees as instructed.

As detailed in the Court's February 23 Order, Gifford has been ordered to supplement discovery on three prior occasions: November 7, 2023, December 28, 2024, and January 3, 2024. (Dkt. 52 at 2-3.) The Court's February 23 Order gave him a fourth chance and this time warned him "that continued failures to provide discovery may result in sanctions, up to and including default judgment." (Dkt. 52 at 15.) Gifford does not care.

He continues with his strategy of promising just enough to keep the case alive and avoid terminating sanctions. He states in his March 22 Affidavit, "Mr. Gifford hopes the court finds his good faith efforts as a positive step in clearing up the false claims and malicious prosecution he has endured via the Gilberts." (Dkt. 57 at 6.) We are past that point. Until the Court makes good on its warnings, Gifford will only continue to defy the rules and this Court's orders. As the Tenth Circuit aptly explained, there is "no doubt tolerating such behavior would encourage only more of it." *Lee v. Max Int'l, Ltd. Liab. Co.*, 638 F.3d 1318, 1321 (10th Cir. 2011). So it is here.

\* \* \*

---

[3] See Request for Status Conference, submitted concurrently.

## **CONCLUSION**

The Court should enter terminating sanctions against Gifford, strike his pleadings, enter default judgment against him, and award Plaintiffs their attorney fees and costs.

DATED: April 22, 2024.

                                                   **BLANCHARD PATTISON LLC**

                                                   /s/*Bryan J. Pattison*
                                                   BRYAN J. PATTISON
                                                 *Attorneys for Plaintiffs/*
                                                   *Counterclaim-Defendants*

## WORD LIMITATION CERTIFICATION

I certify that this PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS contains 2,911 words (excluding those parts listed in DURCiv 7-1(a)(5)).

/s/*Bryan J. Pattison*
BRYAN J. PATTISON

## CERTIFICATE OF SERVICE

I certify that on April 22, 2024, I served a copy of the foregoing to the following via CM/ECF filing:

Brian James Gifford
bgifford@rodeoexcel.com

/s/Bryan Pattison

12