THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DIAMOND G RODEOS, INC, a Utah Corporation; STEVE GILBERT, an individual; and CYNDI GILBERT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN JAMES GIFFORD, an individual; and DOES 1-10,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [91] MOTION FOR ENTRY OF JUDGMENT**<br><br>Case No. 4:22-cv-00089-DN-PK<br><br>District Judge David Nuffer |

By an order entered October 3, 2024 ("October 3 Order")[1] default judgment was declared an appropriate discovery misconduct sanction against Defendant Brian Gifford. The October 3 Order was based on the Report & Recommendation ("R & R") issued by Magistrate Judge Paul Kohler on May 6, 2024.[2] The R & R recommended granting Plaintiffs' Motion for Terminating Sanctions ("Sanctions Motion").[3] Plaintiffs are Diamond G Rodeos, Inc., Steve Gilbert, and Cyndi Gilbert (altogether "Plaintiffs" or "Diamond G").

On October 31, 2024, Diamond G filed a Motion for Entry of Judgment ("Motion").[4] On November 15, 2024, Gifford filed a Response in Opposition to Plaintiffs' Motion for Default

---

[1] Memorandum Decision and Order Adopting Report and Recommendation ("October 3 Order"), docket no. 78 at 1, filed October 3, 2024.

[2] Report & Recommendation ("R & R"), docket no. 62 at 8, filed May 6, 2024.

[3] Motion for Terminating Sanction ("Sanctions Motion"), docket no. 59, filed April 22, 2024.

[4] Motion for Entry of Judgment ("Motion"), docket no. 91 at 2, October 31, 2024.

Judgment and Demand for Jury Trial which he later amended (collectively "Amended Response").[5] On December 13, 2024, Diamond G filed a Request to Submit for Decision.[6]

After the Motion was filed, the parties were ordered to provide supplemental briefing on Spiced Sugar,[7] a horse that was not listed by name in Plaintiff's Complaint.[8]

Based on the Motion and supplemental briefing, and state of the record, the Motion is GRANTED, and default judgment will be entered.

**Contents**
BACKGROUND ................................................................................................................................ 2
   Factual Background .................................................................................................................. 2
   Procedural Background ............................................................................................................. 4
ANALYSIS ...................................................................................................................................... 10
   Judgment Will Be Entered for the Value of the Horses Listed in the Complaint ............ 10
   Judgment Will Be Entered for Defamation Damages .......................................................... 14
   Judgment Will Be Entered for the Attorneys' Fees Previously Ordered .......................... 18
ORDER ............................................................................................................................................. 18

## BACKGROUND

### Factual Background

Plaintiffs Steve and Cyndi Gilbert are officers of Plaintiff Diamond G Rodeos, Inc.[9] Plaintiff Diamond G Rodeos, Inc. is a Utah corporation with its principal place of business in Toquerville, Washington County, Utah.[10] Diamond G breeds animals and provides livestock to

---

[5] Response in Opposition to Plaintiffs' Motion for Default Judgment and Demand for Jury Trial, docket no. 99, filed November 15, 2024; Amended Response to Order Granting Motion for Entry of Judgment and Demand for Jury Trial ("Amended Response"), docket no. 100, filed November 15, 2024.

[6] Plaintiffs' Request to Submit for Decision, docket no 106, filed December 13, 2024.

[7] Supplemental Memorandum re Damages, docket no. 133, filed July 9, 2025; Supplemental Memorandum re Damages (Amended Exhibits) ("Diamond G's Supplemental Briefing"), docket no. 137, filed July 10, 2025; Notice and Response to Plaintiffs' Supplemental Memorandum Re Damages ("Gifford's Supplemental Briefing"), docket no. 138, filed July 13, 2025.

[8] Complaint ¶¶ 4-5, docket no. 1, filed November 18, 2022.

[9] *Id.*

[10] *Id.* ¶ 3.

Professional Bull Riders and Professional Rodeo Cowboys Association Rodeos and events nationwide.[11] Diamond G had a business relationship with Gifford for over twelve years, buying and trading livestock with him.[12] Gifford eventually worked for Diamond G as Ranch Manager from September 1, 2021, through April 21, 2022.[13]

During his tenure as Ranch Manager, Gifford transported three horses bearing the "Diamond G" brand across state lines.[14] When asked, Gifford did not tell Diamond G about the location of these missing horses.[15] Diamond G discovered that Gifford sold at least one of the horses.[16] Diamond G fired Gifford on April 21, 2022.[17] After firing Gifford, Diamond G discovered that Gifford had taken ten more horses to Wyoming.[18]

Gifford also posted inflammatory comments about Plaintiffs on social media.[19] In the Motion, Diamond G illustrates the breadth of Gifford's commentary which includes:[20]

- stating that Cyndi Gilbert was a "counterfeit" with "mental issues,"
- stating that both Steve and Cyndi Gilbert were horse thieves;
- stating that Steve Gilbert was bisexual;
- stating that the Gilberts "used cronyism favors to get [him] arrested and charged";
- stating that Plaintiffs "violate animal health laws as a routine";

---

[11] Motion at 2.

[12] *Id.*

[13] Complaint ¶ 12.

[14] *Id.* ¶ 14.

[15] Motion at 3 (*citing* Gilbert Decl. ¶ 12.)

[16] Complaint ¶ 12.

[17] *Id.*

[18] *Id.* ¶ 15.

[19] *Id.* ¶ 18.

[20] Motion at 4-5 (Gilbert Decl. ¶¶ 24-29 and Exs. 16-18).

- stating that the Gilberts conspired with the state brand inspector to commit theft; and

- emailing a rodeo with which Plaintiffs have done business for 30 years stating that they engaged in a "habitual pattern" of breaking the law.

Diamond G further alleges that through social media and other platforms Gifford made every effort to bring these falsehoods to the attention of St. George Regional Hospital (where Plaintiff Cyndi Gilbert volunteers), the St. George News, Cross Hollow Arenas, and the Utah Cattleman's Association.[21]

## Procedural Background

On November 11, 2022, Diamond G filed this case seeking to recover from Gifford for the loss of thirteen horses and his defamation of their reputation.[22] On November 23, 2022, Gifford confirmed in a parallel criminal proceeding that he was at one point in possession of some of the missing horses.[23] On April 21, 2024, after a year of trying to engage the discovery process with Gifford, Diamond G filed the Sanctions Motion requesting default judgment under Federal Rule of Civil Procedure 37(b)(2)(A).[24] On May 2, 2024, Magistrate Judge Kohler held a hearing to discuss Plaintiff's Sanctions Motion, which Gifford did not attend.[25]

The magistrate judge recommended default judgment as an appropriate sanction under Federal Rule of Civil Procedure 37(b)(2)(A) because Defendant Brian Gifford "failed to comply

---

[21] Id. at 5 (*citing* Gilbert Decl. ¶ 25 at Ex. 16.)

[22] Complaint at 3-4.

[23] Official Transcript of Electronic Recording for *State of Utah v. Brian James Gifford* at 51, docket no. 65, filed July 5, 2024.

[24] Sanctions Motion at 8.

[25] R & R at 4.

with at least four of this Court's discovery orders,"[26] and "provided 'document dumps' that are either nonresponsive to the remaining discovery requests or filled with empty promises."[27] "Despite being given several chances and more than enough reminders, Mr. Gifford never supplemented his responses with more information or the records he claimed to be working towards obtaining."[28] "Additionally, Mr. Gifford argued in one of his affidavits that the [magistrate judge]'s sanctions order somehow threatened him and that the [magistrate judge] should no longer hold office because such 'threats' are 'not good behavior.'"[29]

The magistrate judge carefully analyzed the factors governing imposition of terminating sanctions, including prejudice to each plaintiff;[30] amount of interference with the judicial process;[31] culpability of Gifford;[32] warning of the possibility of terminating sanctions;[33] and efficacy of lesser sanctions.[34] The R & R was adopted without objection from Gifford.

Judge Kohler noted, "Mr. Gifford has decided that he will no longer participate in this litigation."[35] According to Judge Kohler,

> Mr. Gifford has been sufficiently warned that failure to abide by court processes and orders would result in dispositive sanctions up to and including default judgment. The undersigned warned him of such a sanction in the order dated February 23, 2024, and District Judge David Nuffer has also issued two similar warnings. Due process is satisfied.[36]

---

[26] *Id.* at 6.

[27] *Id.*

[28] *Id.* at 7.

[29] *Id.*

[30] *Id.* at 6.

[31] *Id.* at 6-8.

[32] *Id.* at 8.

[33] *Id.*

[34] *Id.* at 8-9.

[35] *Id.*

[36] *Id.*

Judge Kohler stated that lesser sanctions, such as attorney's fees, had been tried and "Mr. Gifford's actions clearly indicate his unwillingness to acknowledge, confer about, or pay the previously ordered attorney fee sanction. Given his failure to comply with lesser sanctions, it is unlikely that non-dispositive sanctions would be effective in this scenario."[37]

On October 4, 2024, Gifford was ordered to pay $7,560.00 in attorney's fees to Diamond G within 14 days.[38] These fees were incurred in Diamond G's successful prosecution of another motion to compel.[39]

On the same day, Gifford untimely filed objections to the adoption of the R & R, and a Motion to Stay Enforcement of Judgment Pending Appeal.[40] Any objections were due in May 2024. Also on the same day, Gifford also filed a Motion to Stay Enforcement of Judgment Pending Appeal.[41] On October 8, 2024, Gifford's objections were overruled, in part, "because Gifford did not attend the hearing on the motion seeking sanctions that led to the [R & R]."[42] Though Gifford stated he was denied due process it was noted, "[i]f Gifford has not been fully heard, it is because of his failure to follow the rules of procedure [and] prior court orders, and to fully participate."[43]

On October 31, 2024, Diamond G filed the Motion for Entry of Judgment ("Motion") which is resolved in this order. In the Motion, Diamond G lists a total of fourteen horses that

---

[37] *Id*.

[38] Order Granting Motion for Attorney's Fees at 2 ("October 4 Fees Order"), docket no. 80, filed October 4, 2024.

[39] Plaintiffs' Short Form Discovery Motion Re: Defendant's Responses to First Written Discovery, docket no. 36, November 6, 2023.

[40] Defendant's Objection to Memorandum Decision and Order Adopting Report and Recommendation, docket no. 81, filed October 4, 2024; Motion to Stay Enforcement of Judgment Pending Appeal, docket no. 82, filed October 4, 2024.

[41] Motion to Stay Enforcement of Judgment Pending Appeal, docket no.82, filed October 4, 2024.

[42] Memorandum Decision and Order Overruling Objections, docket no. 83 at 1-2, filed October 8, 2024.

[43] *Id*. at 2.

Gifford converted for which they sought damages.[44] Thirteen were listed in the Complaint.[45] The fourteenth horse was Spiced Sugar.[46] Diamond G asked for a specific amount for each horse, ranging from $7,500 – $12,500, plus pre-judgment interest, amounting to a total of $152,234.31 in damages.[47] This amount was calculated as of the date of the motion's filing. The amount awarded below takes into account the time between the filing of the Motion and this order. In the Motion, Diamond G also seeks $25,000 in damages caused by Gifford's defamatory statements on various social media platforms.[48]

On November 15, 2024, Gifford filed a response and an Amended Response.[49] Most of Gifford's arguments were nonsensical or rehashed arguments that were previously rejected. Gifford's only new argument was that Diamond G did not comply with Federal Rule of Civil Procedure 55(b)(1).[50] On December 13, 2024, Diamond G filed a Request to Submit for Decision.[51]

On April 7, 2025, Gifford's Motion to Stay Enforcement of Judgment Pending Appeal was denied because Gifford "completely ignore[d] the rationale that led to the default judgment against him—*his* failures to participate in discovery and comply with court orders."[52] Furthermore, the stay was sought "pending appeal" but Gifford never filed a notice of appeal.

---

[44] *Id*. at 3.

[45]

[46] *Id*.

[47] *Id*. at 7-8.

[48] *Id*. at 11.

[49] *See* Response in Opposition to Plaintiffs' Motion for Default Judgment and Demand for Jury Trial, docket no. 99, filed November 15, 2024; *also* Amended Response.

[50] *See generally* Amended Response.

[51] Plaintiffs' Request to Submit for Decision, docket no 106, filed December 13, 2024.

[52] Memorandum Decision and Order Denying Motion to Stay Enforcement of Judgment at 2, docket no. 110, filed April 7, 2025.

On the same day, more sanctions were entered against Gifford. First, Gifford was ordered, again,[53] to pay attorney's fees to Diamond G. This time he was ordered to pay $4,674.00 within 28 days.[54] Second, the Memorandum Decision and Order Denying Relief Sought in Various Filings ("Filing Restrictions Order") imposed filing restrictions against Gifford due to his "pattern of filing improper, non-responsive, deficient, baseless, irrelevant filings; his repeated ignoring of court orders; and his failures to follow the rules of procedure."[55] Since the Filing Restrictions Order's entry, Gifford has mostly failed to submit a filing that complies with the order.[56]

On April 12, 2025, Gifford sent an email to the court clerk stating, "Let me be clear: I do not owe the plaintiffs' attorney fees."[57] On the same day, Gifford submitted a filing to the court clerk that attached copies of multiple court orders sanctioning Gifford, on which he stamped the word "void" and declared "I, Brian James Gifford, Demandant in propria persona, do not consent

---

[53] *See* October 4 Fees Order

[54] Order Granting Motion for Attorney Fees ("April 7 Fees Order"), docket no. 108, entered April 7, 2025.

[55] Memorandum Decision and Order Denying Relief Sought in Various Filings ("Filing Restrictions Order"), Docket no. 109 at 2, filed April 7, 2025.

[56] Notice of Non-Cooperation with Fraudulent Process and Preservation of Rights, docket no. 111, filed April 12, 2025; Petition for Quia Timet Relief, docket no. 113, filed April 17, 2025; Notice of Judicial Retaliation, Denial of Access to Court, And Demand to Compel Entry of Constitutional Record Under Rule 83 and 28 U.S.C. § 2071, docket no. 114, filed April 17, 2025; Declaration of Abjuration of Assumed Authority Due to Dolus Matus, docket no. 115, filed April 21, 2025; Complaint of Judicial Misconduct or Disability, docket no. docket no. 116, filed April 22, 2025; Notice of Fraud on The Court, Conspiracy to Defraud, And Suppression of Evidence, docket no. 117, filed May 5, 2025; Notice Aad Demand for Procedural Clarification Regarding Docket Entry 119, docket no. 122, filed May 14, 2025; Declaration of Procedural Suppression and Denial of Access to Court, docket no. 126, filed May 30, 2025; Motion for Leave to Appear Remotely, docket no. 129, filed July 8, 2025; Supplemental Filing Re: Retaliation, Threats, And Judicial Escalation Following Protected Activity, docket no. 130, filed July 8, 2025; Notice and Response to Plaintiffs' Supplemental Memorandum Re: Damages (Filed Under Duress and Coercion), docket no. 138, July 13, 2025; Objection and Motion for Reconsideration of Order Denying Remote Appearance, docket no. 141, filed July 21, 2025.

[57] Order Setting Hearing On [119] Motion to Hold Defendant Brian Gifford In Civil Contempt, docket no. 134, filed July 8, 2025 (internal citations omitted).

to continued judicial overreach…."[58] and "[l]et this notice stand as my formal rejection of fraud, reservation of rights, and refusal to consent to theft disguised as legal process."[59]

On June 27, 2025, the parties were ordered to file supplemental briefing before July 14, 2025, on the inclusion of Spiced Sugar in the Motion though that horse was not listed in the Complaint.[60] The order required that filings comply with the Federal Rules of Civil Procedure and the Filing Restrictions Order. On July 9, 2025, Diamond G filed their supplemental brief, which was amended on July 10, 2025.[61] Gifford did not, by the July 14, 2025, deadline, file a response that complied with the Filing Restrictions Order.[62] The non-conforming response contained rehashed arguments which had been previously presented and rejected.[63]

On July 11, 2025, Gifford filed a writ of mandamus with the Tenth Circuit Court of Appeals seeking a stay of the district court proceedings.[64] On July 15, 2025, the Tenth Circuit denied Gifford's motion to stay the case.[65] Therefore, as of the filing of this Order, Diamond G is the only party which has filed a timely supplemental brief that complies with the Federal Rules of Civil Procedure and the Filing Restrictions Order. There is no stay in effect.

---

[58] Notice of Filing - Notice of Non-Cooperation with Fraudulent Process and Preservation of Rights, docket no. 111 at 1, filed April 12, 2025.

[59] *Id*. at 3.

[60] Order for Supplemental Briefing, docket no. 127 , filed June 27, 2025.

[61] *See generally* Diamond G's Supplemental Briefing

[62] *See* Gifford's Supplemental Briefing; Supplemental Filing Re: Retaliation, Threats, and Judicial Escalation Following Protected Activity, docket no. 130, filed July 8, 2025.

[63] *See* Gifford's Supplemental Briefing at 1-3.

[64] *In re: Gifford*, Tenth Circuit Case No. 25-4087, docket no. 1, filed July 11, 2025.

[65] Order, docket no. 140, filed July 15, 2025.

## ANALYSIS

Diamond G's Complaint alleges six causes of action.[66] The first three causes of action involve Gifford's taking of horses across state-lines:[67]

(1) conversion;

(2) tortious interference;

(3) unjust enrichment.

The last three causes of actions involve the comments Gifford made on social media regarding Plaintiffs' personal lives and business practices:[68]

(4) defamation;

(5) interference with economic relations;

(6) false light invasion of privacy.

Diamond G's Motion asks for default judgment for Gifford's conversion of fourteen horses (one more horse than was listed in the Complaint) and for his defamatory statements.[69]

The issue of entry of default judgment for a specific amount is now ready for resolution. The Motion and supplemental briefing that followed, the applicable Federal Rules of Civil Procedure, and the Filing Restrictions Order have been reviewed. The Motion will be GRANTED.

### Judgment Will Be Entered for the Value of the Horses Listed in the Complaint

No horses have been returned to Diamond G during the pendency of this action. Under Utah law, "[a] conversion is an act of willful interference with a chattel, done without lawful

---

[66] Complaint at 5-9.

[67] *Id*. at 5-7.

[68] *Id*. at 7-9.

[69] *Compare* Motion at 3; *with* Complaint at 3-4.

justification by which the person entitled thereto is deprived of its use and possession."[70] Damages for conversion are, "when property is not returned[,] the value of the property at the time of the conversion, plus interest."[71] "This measure is appropriate because the remedy for conversion is analogous to a forced sale of the converted property from the plaintiff to the defendant."[72] "When a plaintiff is awarded the value of his property at the time of the conversion, he is not entitled to additional damages for the loss of use of his property."[73]

Under Utah law, prejudgment interest is "the federal post judgment interest rate as of January 1 of each year, plus 2%."[74] Prejudgment interest accrues from the date of conversion to the date of judgment.[75] The federal post-judgment interest rate as of January 1, 2025, is 4.23%.[76] Th prejudgment interest rate for 2025 is therefore 6.23%.

The Complaint contained two lists of converted horses, taken at different times, with the caveat that the lists were not all-inclusive.

> 14. *While working at Diamond G,* on or about December, 2021, Defendant, without authorization or permission, removed at least three (3) Diamond G Animals bearing the Diamond "G" Brand and transported them out of the State of Utah without the approval of Plaintiffs. The Diamond G Animals taken by Defendant on or about December, 2021 include, but are not limited to the following animals (Brand Number, Name – Type):
>
>   a. No. 08, Gravity Falls – Mare;
>   b. No. 51, Frosted Sugar – Mare; and

---

[70] *AAAG-California, LLC v. Kisana,* 439 F. Supp. 3d 1265, 1273 (D. Utah 2020) (*quoting Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295–96 (Utah 1999)).

[71] *Henderson v. For-Shor Co.,* 757 P.2d 465, 468 (Utah Ct. App. 1988) (*quoting Madsen v. Madsen*, 72 Utah 96, 102, 269 P. 132, 134 (1928)).

[72] *Mahana v. Onyx Acceptance Corp.*, 96 P.3d 893, 899 (Utah 2004).

[73] *Henderson*, 757 P.2d at 470.

[74] Utah Code § 15-1-1(3).

[75] *Henderson*, 757 P.2d at 468.

[76] Utah Code § 15-1-4; Post Judgment Interest Rates, Utah State Courts, https://www.utcourts.gov/en/court-records-publications/resources/interest-rates/interestrates.html (last visited July 25, 2025).

11

      c. No. 847, Hide & Watch – Mare.[77]

The Diamond G livestock taken by Defendant *following his discharge [from employment]* include, but are not limited to, the following animals (Brand No., Name - Type):

      a. No. 11, Paints Gone - Mare;
      b. No. 1V, Rezless Cat - Mare;
      c. No. 41, Taylor Made - Mare;
      d. No. 44, My Buddy - Mare;
      e. No. 52, Bailey Boo - Mare;
      f. No. 02G, Quirky Cat - Mare;
      g. No. 03G, Falling Out - Gelding;
      h. No. 01G, Buddy Up - Gelding;
      i. No. 05G, Boo's Magic - Gelding; and
      j. No. 07G, Taylor's Matrix - Gelding.[78]

Thirteen horses were identified in the Complaint. In each list, the Complaint put Gifford on notice that the lists were not the limitation of the conversion claim. In addition to the express statement that the lists were not all inclusive, the Complaint also requested "such other and further relief as the Court deems just, equitable, or proper."[79]

By the language of the Complaint, the fourteenth horse, Spiced Sugar falls within the scope of the original claims. Further, Gifford has treated Spiced Sugar as a horse at issue by an affidavit filed in 2023.[80]

The value of the horses was established by the declaration of Cyndi W. Gilbert,[81] with exhibits attached. Diamond G provided a chart of the converted horses and their values:

| Horse | Value |
|---|---|
| 11 Paints Gone | $12,500.00 |
| 1V Rezless Cat | $12,500.00 |

---

[77] Complaint, ¶ 14 (emphasis added).

[78] *Id*., ¶ 15 (emphasis added).

[79] *Id*., Prayer for Relief, ¶ f., at 9.

[80] [Brian Gifford's] Affidavit in Case No. 4:22-cv-00089-DN *Diamond G Rodeos et al v. Gifford* ¶6.1.1.2 at 2 and Exhibit AA-12 at 22, docket no. 42, filed December 28, 2023.

[81] Declaration of Cyndi W. Gilbert Part 1, docket no 91-1, filed October 31, 2024.

| | |
|---|---|
| 08 Gravity Falls | $9,500.00 |
| 41 Taylor Made | $9,500.00 |
| 44 My Buddy | $9,500.00 |
| 51 Frosted Sugar | $9,500.00 |
| 04G Spiced Sugar | $9,500.00 |
| 52 Bailey Boo | $9,500.00 |
| 847 Hide & Watch | $9,500.00 |
| 02G Quirky Cat | $9,500.00 |
| 03G Falling Out | $7,500.00 |
| 01G Buddy Up | $7,500.00 |
| 05G Boo's Magic | $7,500.00 |
| 07G Taylor's Matrix | $7,500.00 |
| TOTAL | **$131,000.00** |

Plaintiff Cyndi Gilbert's affidavit includes exhibits for each animal, and each of these exhibits include a picture of the horse; ledgers of how the horses came into their possession; whether traded, sold, or purchased; Certificates of Pedigree from American Bucking Bull showing Plaintiffs as the owners; various ledgers from PRCA showing the ownership status of the animals.[82] Also, accompanying each exhibit for each animal was a document titled "Horses from Brian Gifford" which shows that some of these horses were at one point in Gifford's control.[83]

In the Amended Response, Gifford's only novel defense asserts that Diamond G fails to provide a "sum certain" under Rule 55(b)(1) and therefore the Motion should be denied.[84] Gifford misreads the rule, because Rule 55(b)(1) is only applicable for the entry of default judgment *by the Clerk of Court*.[85] As this judgment is being entered by a judge, not the clerk, default judgment is being entered under Rule 55(b)(2).[86] Gifford's argument is inapplicable.

---

[82] Declaration of Cyndi W. Gilbert Part 1, docket no 91-1, filed October 31, 2024; Declaration of Cyndi W. Gilbert Part 2, docket no 91-2, filed October 31, 2024.

[83] *Id*.

[84] Amended Response at 2.

[85] Fed. R. Civ. P. 55(b)(1)

[86] Fed. R. Civ. P. 55(b)(2)

13

Cyndi Gilbert's affidavit, which includes the exhibits for each animal comply with the requirements of Rule 55(b)(2).

The Motion presents sufficient evidence to enter default judgment. Therefore, for the reasons stated above, default judgment for Diamond G's conversion claims as to the fourteen horses is GRANTED. Judgment will be entered in the value of $131,000 "plus [pre-judgment] interest" of $27,368.97.[87] The total conversion damages are $158,367.97.

### Judgment Will Be Entered for Defamation Damages

The defamation claims were outlined in detail in the Complaint and supported by the declaration of Cyndi W. Gilbert,[88] with exhibits attached. Diamond G also submitted Supplemental evidence of social media posts published after the start of this case.[89]

"In order to constitute defamation per se, the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman."[90] "When defamatory words are actionable per se, 'the law presumes conclusively that damage has followed, and the plaintiff need neither allege nor prove it.'"[91] "In order for a statement to be false, it must first be factually based, not merely an opinion."[92] "However, in Utah, so long as the First Amendment does not

---

[87] *Henderson*, 757 P.2d at 468. This calculation was made through ChatGPT using the following parameters: Three horses taken on or about December 2021; the remaining horses were taken after April 21, 2022: 6.23% interest from date of conversion through July 31, 2025.

[88] Declaration of Cyndi W. Gilbert, ("Gilbert Decl.") docket no 91-1, filed October 31, 2024.

[89] Plaintiffs' Notice of Supplemental Evidence Supporting Default Judgment, docket no. 97, filed November 15, 2024 (*citing* Exhibit A – Gifford Social Media Post, docket no. 97-1, filed November 15, 2024); Gifford's response did not comply with the Filing Restrictions Order and contained no relevant information. Defendant's Rebuttal to Plaintiff's Notice of Supplemental Evidence, docket no. 101, filed November 15, 2024.

[90] *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983)

[91] *Westmont Mirador, LLC v. Miller*, 362 P.3d 919 Utah Ct. App. 2014) (quoting *Nichols v. Daily Reporter Co.* 83 P. 573, 574 (Utah 1905))

[92] *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1193 (D. Utah 2024)

require otherwise, "[f]alsity is usually presumed, and truth is an affirmative defense that the defendant bears the burden of proving."[93] Under Utah law, defamation per se can be found "where defendant generated [] posts on publicly accessible social media accounts that had several thousand followers at the time the posts were made, and third-parties commented on such posts and contacted plaintiff directly in relation to posts."[94]

Diamond G claims that Gifford's statements are defamation per se because they fall under the "charge of criminal conduct" or "charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office."[95] Cyndi Gilbert's declaration details Gifford's public statements on social media and in a targeted email, accusing Steve and Cyndi Gilbert of criminal behavior, including attempting to steal Gifford's "stud horse" and then accusing the Gilberts of participation in the horses "mysterious" death.[96] Gifford further alleged that the Gilberts engaged in corruption with the Utah Brand Inspector and county officials to facilitate theft and wrongful arrests, and that their business operates in violation of health and other laws.[97]

These social media posts, directly impute criminal activity and conduct inconsistent with the ethical operation of a business. Therefore, these posts satisfy the criteria for defamation per se under Utah law and negating the need for Diamond G to prove actual damages.

Regarding damages, Diamond G highlights a concern that because "Gifford is in the industry, worked for Diamond G on the front line of tending these relationships, and knows the

---

[93] *Id*.

[94] *Id*.

[95] Motion at 9-11.

[96] Gilbert Decl., Exhibit 16.

[97] *Id*.

same people and contacts, any nominal damages award would only spur him to continue unabated in his defamation campaign."[98] Diamond G is concerned that any award less than $25,000 for defamation damages will not deter Gifford. Instead, they believe it will only embolden him to intensify his social media attacks, "ramping them up and sparing no one—the court, the clerks, and attorneys—in the process."[99] The breadth of Gifford's dissemination is a factor in ascertaining damages.

Since filing the Motion in October 2024, it seems that Gifford's actions have ramped up to including court personnel. On April 17, 2025, Gifford emailed the court clerk asserting the attorneys' fees orders were invalid; attempted to file documents that did not comply with the Filing Restrictions Order; and asserted "[a] copy of this filing has been shared with relevant federal clerks, oversight offices, and legislative staff due to the nature of the concerns involved."[100] Gifford copied Chief Judge Shelby's chambers (utdecf_shelby@utd.uscourts.gov); U.S Representative Harriet Hageman's office (trinity.lewis@mail.house.gov); Big Horn County Attorneys Ms. Marcia Bean (marcia.bean@bighorncountywy.gov), and Mr. Ken Blackburn (ken.blackburn@bighorncountywy.gov); as well as Tenth Circuit staff (ca10_team1@ca10.uscourts.gov) on the email.[101] On April 22, 2025, Gifford filed an ethics complaint with the Tenth Circuit.[102]

On July 21, 2025, Gifford attempted to avoid a hearing by emailing all parties listed above, plus the Utah Supreme Court (supremecourt@utcourts.gov); Utah Office of Processional

---

[98] Motion at 11.

[99] *Id*.

[100] Gifford April 17, 2025, Email to Court Clerk ("Exhibit C"), docket no. 119-3, filed May 9, 2025.

[101] Gifford April 12, 2025, Email to Court Clerk ("Exhibit B"), docket no. 119-2, filed May 9, 2025.

[102] Complaint of Judicial Misconduct or Disability, docket no. docket no. 116, filed April 22, 2025.

16

Conduct (cgreenwood@opcutah.org; rutu@opcutah.org); Utah State Bar's Ethics and Discipline Committee (clerk@utahethicscomm.org); Utah's Division of Risk Management (rachelgterry@utah.gov; swhughes@utah.gov); The Cowboy State Daily (jen@cowboystatedaily.com); The Zion Times (theziontimes@gmail.com); and the Office of the Utah Attorney General (uag@agutah.gov).[103] In the email, Gifford repeated some of the criminal claims previously discussed, gave his opinion of proceedings in this case, and then asserted that if these parties failed to assist him, they would be "complicit in theft under color of law, obstruction of access to justice, and retaliation for protected filings."[104]

In the Amended Response, Gifford, again, asserts that Diamond G fails to provide a "sum certain" under Rule 55(b)(1).[105] Gifford, again, misreads the rule, as Rule 55(b)(2), not Rule 55(b)(1) governs default judgment in this case.[106] Again, Gifford's argument is inapplicable. The exhibits and evidence presented by Diamond G comply with the requirements of Rule 55(b)(2).

Therefore, for the reasons stated above, a defamation damages judgment for the plaintiffs will be entered in the amount of $25,000.

---

[103] E-mail from Brian Gifford to Utah government agencies and private news agencies (July 21, 2025), docket no. 147, filed July 31, 2025.

[104] *Id*.

[105] Amended Response at 2.

[106] Fed. R. Civ. P. 55(b)(2)

**Judgment Will Be Entered for the Attorneys' Fees Currently and Previously Ordered**

Diamond G has previously been awarded $7,560.00 on October 4, 2024,[107] and $4,674.00 on April 7, 2025.[108] The total is $12,234. Judgment will include these awards of attorneys' fees with prejudgment interest of $452.73.[109]

### ORDER

IT IS HEREBY ORDERED that:

    a)     The Motion is GRANTED.

    b)     Default Judgment shall be entered in favor of Plaintiffs and against Defendant:

        1) Diamond G is awarded $158,367.97 in damages for the conversion claims which includes prejudgment interest.

        2) Diamond G is awarded $25,000 in damages for the defamation claim.

        3) Diamond G is awarded $12,234.00, the amounts Gifford was ordered to pay under the previously entered orders, plus prejudgment interest of $452.73.

---

[107] *See* October 4 Fees Order.

[108] *See* April 7 Fees Order.

[109] This calculation was made through ChatGPT using the following parameters: Utah's rule sets prejudgment interest at the federal post-judgment interest rate from January 1 of each year plus 2%, resulting in a rate of 4.93% for 2024 and 6.23% for 2025. The calculation uses simple interest, meaning the interest does not compound. Interest on the $7,560 judgment accrues from October 4, 2024, through July 31, 2025, covering 88 days in 2024 and 212 days in 2025. Interest on the $4,674 judgment accrues from April 7, 2025, through July 31, 2025, totaling 116 days. The total prejudgment interest as of July 31, 2025, equals $452.73.

   c)  The Clerk of Court shall CLOSE the case.

Signed July 31, 2025.

              BY THE COURT

              _____
              David Nuffer
              United States District Judge